A92A0374. MARTIN v. THE STATE.
(420 SE2d 645)

ANDREWS, Judge.

Martin was tried by a jury and convicted of possession with intent to distribute cocaine and misdemeanor possession of marijuana.

1. In his first enumeration of error, Martin argues the trial court erred in overruling his motion to suppress. In reviewing a ruling on a motion to suppress, the evidence is viewed in a light most favorable for upholding the trial court's findings, which will be accepted unless clearly erroneous. *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990).

The evidence here was that on September 15, 1988, two undercover officers first observed defendant driving his car and drinking a quart-sized beer. Later that day, the police saw Martin in another place talking to a man with a beer in his hand.

The same afternoon, the officers saw Martin for a third time when he was parked in an area to the side of the road where drug deals were known to take place. Martin was talking with a man in a different car when the police drove by and recognized him. Martin got out of the car and into his own car. In the meantime, the other vehicle drove away and the police officers parked their vehicle where the previous car had been, which was not blocking Martin's vehicle, and walked up to Martin. He got out of his car, with a quart of beer in his hand, as the officers approached. Although one of the officers initially pulled his weapon, by the time he was close to Martin's vehicle, he had put his weapon away and neither officer had his weapon ready.

The officers saw a small, yellow bag of the type used to contain drugs at Martin's feet, picked it up, and discovered 1/10 gram of marijuana. Martin denied that it was his. The officers asked Martin for his driver's license and insurance card and he said that he did not have either. The officers noticed that Martin's eyes were glassy and that he smelled of alcohol. One of the officers asked Martin for con-

sent to search his car. Martin consented and began to hand the officer his keys.

The other officer found a pill bottle underneath a towel on the front seat and asked Martin what it was. At this point, Martin turned and ran before handing over the keys. The officers conducted a search of the vehicle and found a pill bottle, to which a label with a name by which Martin was known was affixed. The pill bottle contained nine small plastic baggies each of which was filled with about $10 worth of cocaine and a manila envelope containing marijuana. This evidence formed the basis of the instant charges against Martin and of his motion to suppress.

Pretermitting the issue of whether a "stop" was involved here, we note that "merely observing a can of beer in the hand of one who is otherwise driving a car or operating a boat in a safe manner does, in and of itself, constitute an articulable suspicion that a violation of OCGA § 40-6-391 or OCGA § 52-7-12 may be occurring so as to authorize a brief investigatory stop." (Emphasis deleted.) *State v. Baker*, 197 Ga. App. 1, 2 (397 SE2d 554) (1990). Martin's argument that the investigatory inquiry made by the police was unauthorized is without merit given that they had observed him drinking and driving.

The trial court's finding that Martin's consent to search was freely and voluntarily given was supported by the record. See generally *Arena v. State*, 194 Ga. App. 883 (1) (392 SE2d 264) (1990). Although Martin testified at trial, he did not contradict the officers' testimony regarding the voluntary nature of his consent. The evidence was that Martin consented to the search, the officer found the cocaine and Martin fled. Martin's argument that his consent was invalidated since it was predicated on an illegal detention is meritless. See *Baker*, supra. Martin's initial consent combined with the fact that once the officers began talking with Martin they learned that he had no driver's license or insurance, observed that he appeared to have been drinking, and saw the bag of marijuana at his feet, authorized the search and the trial court did not err in denying Martin's motion to suppress. See generally *Freeman v. State*, 195 Ga. App. 357 (393 SE2d 496) (1990).

2. In Martin's second enumeration of error, he argues that the trial court erred in refusing to reveal the identity of a confidential informer with regard to evidence of similar transactions. Evidence regarding the confidential informant was that on April 5, 1989, several months after the incident outlined above, for which Martin was on trial, a confidential informer rode with an undercover agent in an unmarked car. When they saw Martin, the informer introduced the agent as his cousin and asked Martin if he had any drugs. Martin admitted that he had drugs. The undercover officer then spoke with Martin and bought cocaine from him.

The undercover officer also encountered Martin on April 27, when the agent, unaccompanied by the informer, met Martin at a liquor store. At that time, the officer gave Martin money for cocaine. The same officer saw Martin at a party on April 29 when he delivered the drugs to him. The officer identified Martin in a photographic lineup and testified at trial that he was certain of Martin's identity.

Martin claimed that the officer misidentified him and that the informer's testimony was material to this defense. Martin, who admitted that he was a cocaine addict, also claimed that he saw the undercover agent using cocaine and that the officer performed homosexual acts in exchange for the drug.

Pretermitting the question of whether the law regarding confidential informants applies to their identity when the issue involved is evidence of similar transactions, and pretermitting the issue of whether any alleged error was properly preserved, we find no error here. Even if the identity of the informer had been involved in the charges for which Martin was on trial, the nondisclosure of identity was not erroneous. "Where an informant is a mere tipster, disclosure of his identity is not required. [Cits.] But where the informer is a witness or participant, a request for disclosure requires the trial court to balance the benefits of disclosure to the defendant against the resulting harm to the government. [Cits.] Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (Citations and punctuation omitted.) *Ponder v. State*, 191 Ga. App. 346, 347 (381 SE2d 534) (1989).

Here, after this trial had concluded, the court held a hearing regarding the informer, apparently in the case involving other charges against Martin, to inquire into the discoverability of the informant's identity. During the hearing, the court questioned the agent regarding the extent of his knowledge of the informer's identity and the role the informer played in the cocaine purchase on April 5. From the transcript of that hearing which is included here, the evidence appeared to be that only one of the three collateral transactions occurred in the presence of the informant and that even that one transaction was conducted largely by the undercover agent. See generally *Moore v. State*, 187 Ga. App. 387 (2) (370 SE2d 511) (1988).

"Where a person merely takes an undercover agent to a location and identifies or introduces the agent to a seller of drugs, with all arrangements for the sale being wholly made by the agent, even if the sale is witnessed by the introducer, such introducer is nothing more than an informer and acts as a tipster only. Under the facts before the trial court, there were no discovery rights in the tipster mandated by *Brady v. Maryland*, and thus the disclosure rested within the

sound discretion of the trial court. We discern no abuse of that discretion in this case." (Citations and punctuation omitted.) *Brinson v. State*, 188 Ga. App. 214, 215 (372 SE2d 487) (1988); see also *Josey v. State*, 199 Ga. App. 780 (1) (406 SE2d 125) (1991).

3. Martin's third enumeration of error asserts that the trial court erred in admitting evidence regarding the cocaine sales he allegedly made to the undercover agent in April 1989 for which he has been subsequently indicted. He argues first that he did not commit the subsequent crimes and secondly that it was improper for the subsequent crimes to bear on the issue of the intent in the intent to distribute cocaine charge from September 1988. Martin admitted that he had a cocaine problem and that the cocaine found in the car was his, but claimed that the drug was for his own personal use.

"[B]efore any evidence of independent offenses or acts may be admitted into evidence, a hearing must be held pursuant to Uniform Superior Court Rule 31.3 (B). At that hearing, the state must make three affirmative showings as to each independent offense or act it seeks to introduce. The first of these affirmative showings is that the state seeks to introduce evidence of the independent offense or act, not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility. The second affirmative showing is that there is sufficient evidence to establish that the accused committed the independent offense or act. The third is that there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. After the 31.3 (B) hearing, and before any evidence concerning a particular independent offense or act may be introduced, the trial court must make a determination that each of these three showings has been satisfactorily made by the state as to that particular independent offense or act." (Punctuation and citations omitted.) *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

These criteria were met here. Although the defendant denies the subsequent offenses, there was sufficient evidence regarding his identity and sufficient similarity regarding the independent crimes to allow introduction of them. "In deciding whether to admit evidence of independent crimes, it is not necessary for the state to prove beyond a reasonable doubt that the defendant was the perpetrator or that the crime occurred. *Wallace v. State*, 246 Ga. 738 (5) (273 SE2d 143) (1980)." *Kilgore v. State*, 251 Ga. 291, 297 (3) (b) (305 SE2d 82) (1983); *Martin v. State*, 198 Ga. App. 488 (402 SE2d 95) (1991). We are satisfied that sufficient evidence was adduced at trial to show that Martin was the perpetrator in that the undercover agent testified regarding his three separate encounters with Martin and subsequent

identifications of him. In fact, Martin himself testified that he had seen the undercover agent one night at a crack cocaine house. See *State v. Johnson*, 246 Ga. 654 (272 SE2d 321) (1980). The subsequent crimes involving the sale of cocaine were also sufficiently similar to the crimes at issue to allow this evidence. Furthermore, the jury was instructed that the evidence of the other crimes was introduced for the limited purpose of establishing the mental state, identity, or intent of the defendant as it related to the charge of possession of cocaine with intent to distribute. See *Johnson*, supra at 656.

4. In appellant's fourth enumeration of error, he argues that the trial court erred in not declaring a mistrial, or at least replacing a juror, after the judge noticed one of the jurors apparently sleeping during the jury charge. The record reveals that the court stated: "[L]et the record show, as far as I can tell they were all awake and heard what I said. Unless you all have some complaint on it, gentlemen, I'm going to go ahead with it." No objections were raised and Martin is barred from asserting this argument. *Barnwell v. State*, 197 Ga. App. 116 (4) (397 SE2d 717) (1990).

5. In his fifth enumeration, Martin contends that there was insufficient evidence of misdemeanor marijuana possession to sustain the verdict against him. Martin denied that the marijuana found at his feet outside the car was his, but admitted that the pill bottle found in the vehicle was his. There was ample testimony that the pill bottle contained a second manila envelope which contained marijuana. In fact although Martin was uncertain as to whether the marijuana was inside the pill bottle he testified: "I think I had already rolled them up into joints, just rolled." The evidence was sufficient to convict and this enumeration is without merit. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

6. In his sixth enumeration of error, Martin argues that his counsel at trial was not effective. Martin claims he was denied a fair trial because his appointed trial counsel failed to make several motions or objections at critical points in the trial.

At the outset, we must determine whether this enumeration is properly before the court. Martin filed a motion for new trial through his trial counsel on October 12, 1989, but did not raise the issue of ineffective assistance of counsel. On June 13, 1990, the court entered an order allowing defense counsel to withdraw from the case based on defense counsel's potential conflict of interest. On that same date an order was entered ordering present counsel to handle the appeal. On July 26, 1991, 13 months after appellate counsel was appointed, a rule nisi was entered in the case setting the motion for a hearing on October 2, 1991. A hearing was held on the motion, and although there is no transcript of the hearing before us, the motion was denied on October 2, 1991. The notice of appeal was filed on October 17, 1991.

There is no indication from the record before us that the issue of ineffective assistance of counsel was ever raised in the trial court. Claims relating to the effectiveness of trial counsel must be raised at the earliest practicable moment. See *Ponder v. State*, 260 Ga. 840 (400 SE2d 922) (1991); *Battle v. State*, 195 Ga. App. 542 (6) (394 SE2d 788) (1990). "[O]ur Supreme Court, through a series of cases, has fashioned a procedure whereby the appellate court, in deciding whether it should remand the case, should look to whether the issue of ineffectiveness was raised at the earliest practicable moment." (Punctuation and citations omitted.) *Weems v. State*, 196 Ga. App. 429, 430 (3) (395 SE2d 863) (1990).

Here, appellate counsel had ample opportunity to raise this issue before the trial court. Over 15 months elapsed between the appointment of appellate counsel and the hearing on the motion for new trial during which appellate counsel could have raised this argument. Having failed to do so, appellant is barred from asserting this argument here. Compare *Wallace v. State*, 199 Ga. App. 817 (406 SE2d 140) (1991), and *In the Interest of G. G. L.*, 199 Ga. App. 357 (405 SE2d 100) (1991).

7. Finally, appellant asserts that the trial court erred in failing to grant a new trial. This enumeration is without merit.

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED JULY 2, 1992.

*Cook, Noell, Tolley & Aldridge, Edward D. Tolley*, for appellant.
*Harry N. Gordon, District Attorney, Gerald W. Brown, Assistant District Attorney*, for appellee.